UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THERESA M. SERAQUIEL,<br><br>                    Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>                    Defendant. | NO:  12-CV-0169-TOR<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 14, 17).  Plaintiff is represented by Lora Lee Stover. Defendant is represented by Stephanie Lynn F. Kiley.  The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. There being no reason to delay a decision, the hearing set for February 18, 2014, is vacated and this matter is submitted without oral argument.  For the reasons discussed below, the Court grants Defendant's motion and denies Plaintiff's motion.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 1

JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 688 F.3d 1144, 1149 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 2

1    record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

2    court "may not reverse an ALJ's decision on account of an error that is harmless."

3    *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's]

4    ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted).

5    The party appealing the ALJ's decision generally bears the burden of establishing

6    that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

7                        FIVE-STEP SEQUENTIAL EVALUATION PROCESS

8         A claimant must satisfy two conditions to be considered "disabled" within

9    the meaning of the Social Security Act. First, the claimant must be "unable to

10   engage in any substantial gainful activity by reason of any medically determinable

11   physical or mental impairment which can be expected to result in death or which

12   has lasted or can be expected to last for a continuous period of not less than twelve

13   months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be

14   "of such severity that he is not only unable to do his previous work[,] but cannot,

15   considering his age, education, and work experience, engage in any other kind of

16   substantial gainful work which exists in the national economy." 42 U.S.C. §

17   1382c(a)(3)(B).

18        The Commissioner has established a five-step sequential analysis to

19   determine whether a claimant satisfies the above criteria. *See* 20 C.F.R.

20   § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 3

1    work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in

2    "substantial gainful activity," the Commissioner must find that the claimant is not

3    disabled.  20 C.F.R. § 416.920(b).

4          If the claimant is not engaged in substantial gainful activities, the analysis

5    proceeds to step two.  At this step, the Commissioner considers the severity of the

6    claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

7    "any impairment or combination of impairments which significantly limits [his or

8    her] physical or mental ability to do basic work activities," the analysis proceeds to

9    step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

10   this severity threshold, however, the Commissioner must find that the claimant is

11   not disabled.  *Id.*

12         At step three, the Commissioner compares the claimant's impairment to

13   several impairments recognized by the Commissioner to be so severe as to

14   preclude a person from engaging in substantial gainful activity.  20 C.F.R.

15   § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

16   enumerated impairments, the Commissioner must find the claimant disabled and

17   award benefits.  20 C.F.R. § 416.920(d).

18         If the severity of the claimant's impairment does meet or exceed the severity

19   of the enumerated impairments, the Commissioner must pause to assess the

20   claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 4

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations (20 C.F.R.

§ 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past ("past relevant work").  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R.

§ 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the

analysis concludes with a finding that the claimant is disabled and is therefore

entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.

*Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  If

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 5

the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for supplemental security income (SSI) payments on January 16, 2009.  Tr. 133-36.  She alleged disability beginning on December 31, 1989, due to a learning disability, memory deficiencies, and bipolar disorder.  Tr. 133, 162.  Her claims were denied initially and on reconsideration. Tr. 91-97. Plaintiff filed a timely request for a hearing and appeared with an attorney at a hearing before an administrative law judge ("ALJ") on July 20, 2010.  Tr. 44-78.

The ALJ issued his decision on July 6, 2010, finding that Plaintiff had severe impairments and had no past relevant work. Tr. 19-37.  Because the ALJ found that work existed in the national economy that Plaintiff could perform, however, he found that Plaintiff was not disabled under the Act.  Tr. 31-32.  On February 7, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision that is subject to judicial review.  Tr. 1-6; 20 C.F.R. §§ 416.1481, 422.210.

//

//

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

1          ISSUES

2   Plaintiff, Theresa M. Seraquiel, seeks judicial review of the Commissioner's

3  final decision denying her Title XVI Supplemental Security Income.  Plaintiff has

4  raised two issues for review: (1) whether the ALJ erred in assessing her residual

5  functional capacity; and (2) whether the ALJ erred in discrediting Plaintiff's

6  testimony about the severity of her physical and mental impairments.  ECF No. 15

7  at 9.

8        DISCUSSION

9  **A. The ALJ's Residual Functional Capacity Assessment**

10   As noted above, residual functional capacity ("RFC") is defined as the

11  claimant's ability to perform physical and mental work activities on a sustained

12  basis despite his or her limitations.  20 C.F.R. § 416.945(a)(1).  In making an RFC

13  assessment, the Commissioner is required to consider all of the claimant's

14  impairments, including impairments that are not "severe" within the meaning of

15  the regulations.  20 CFR § 416.945(a)(2).

16   In this case, the ALJ assessed Plaintiff's RFC as follows:

17  [C]laimant has the residual functional capacity to perform medium
  work as defined in 20 CFR [§] 416.967(c), but that her capacity for

18  the full range of medium work has been reduced by mental
  impairments that have resulted in deficits of concentration,

19  persistence, and pace that have precluded her from performing more
  than simple repetitive tasks; and deficits of social functioning that

20  have precluded her from performing tasks requiring more than

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 7

superficial occasional contact with the general public or more than
occasional contact with coworkers.

Tr. 27.  In making this finding, the ALJ "considered all symptoms and the extent to
which these symptoms can reasonably be accepted as consistent with the objective
medical evidence and other evidence."  Tr. 27.

Plaintiff contends that the ALJ erred in finding her capable of performing
simple, repetitive tasks which involve only superficial contact with the general
public and only occasional contact with coworkers.  ECF No. 15 at 12.  According
to Plaintiff, this finding does not adequately account for mental limitations noted
by psychologist Scott Mabee, Ph.D., in December 2008, April 2009, and
November 2009.  Specifically, Plaintiff argues that the ALJ did not appropriately
consider her limited abilities to "deal with supervisors, handle stress, maintain
appropriate behavior, and learn new tasks."  ECF No. 15 at 12.

A treating physician's opinions are entitled to substantial weight in social
security proceedings.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228
(9t Cir. 2009).  If a treating or examining physician's opinion is uncontradicted, an
ALJ may reject it only by offering "clear and convincing reasons that are supported
by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir.
2005).  "However, the ALJ need not accept the opinion of any physician, including
a treating physician, if that opinion is brief, conclusory and inadequately supported
by clinical findings."  *Bray*, 554 F.3d at 1228 (quotation and citation omitted).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 8

Contrary to Plaintiff's assertions, the ALJ appropriately balanced the conflicting findings offered by Dr. Mabee in December 2008, April 2009 and November 2009. In December 2008, Dr. Mabee found that Plaintiff suffered from (1) mild limitations in cognitive functioning; and (2) marked to severe limitations in social functioning.[1]  Tr. 307.  Dr. Mabee further found that Plaintiff's occupational GAF score of 50 "suggests that she would have serious difficulties

---

[1] These findings were recorded on a "Psychological/Psychiatric Evaluation" form prepared by the Washington State Department of Social and Health Services ("DSHS").  This form requires an examining physician to rate the patient's level of impairment on several "cognitive factors" and "social factors" on a five-level scale from "none" to "severe."  Cognitive factors include the patient's ability to (1) understand, remember and follow simple (one or two step) instructions; (2) understand, remember, and follow complex (more than two step) instructions; (3) learn new tasks; (4) exercise judgment and make decisions; and (5) perform routine tasks.  Social factors include the patient's ability to (1) relate appropriately to co-workers and supervisors; (2) interact appropriately in public contacts; (3) respond appropriately to and tolerate the pressures and expectations of a normal work setting; (4) care for self, including personal hygiene and appearance; and (5) control physical or motor movements and maintain appropriate behavior.  Tr. 307.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

functioning in a typical work environment." Tr. 314. The ALJ afforded "little weight" to these findings, noting that they were (1) inconsistent with Plaintiff's reported activities of daily living; (2) heavily based upon Plaintiff's self-reports; (3) conclusory; (4) "inconsistent with the examination notes and findings;" (5) "not well supported by [Dr. Mabee's] clinical findings such as an unremarkable mental status examination;" and (6) internally inconsistent to the extent that Dr. Mabee had noted only "mild cognitive limitations in work abilities," but also diagnosed Plaintiff with borderline intellectual functioning. Tr. 30.

In April 2009, Dr. Mabee rated Plaintiff's cognitive functioning impairments as mild to moderate. Tr. 321. This assessment was generally consistent with the December 2008 evaluation. In sharp contrast to the December 2008 evaluation, however, Dr. Mabee rated Plaintiff's social functioning impairments as only mild to moderate. Tr. 321. In Dr. Mabee's view, this improvement in social functioning was likely the result of Plaintiff taking her prescribed medication. Tr. 326. "[I]f she is able to continue with her current prescribed medication regimen," Dr. Mabee opined, "then it is likely [that] her social interactions with others will improve. Her current ability to persist in a work environment is improving and it is likely that upon further stabilization of her symptoms that she should be able to return to at least entry-level employment in the near future." Tr. 327. The ALJ afforded "significant weight" to these findings, noting that they were (1) based

upon an in-person examination of Plaintiff; (2) consistent with Plaintiff's reported activities of daily living; (3) consistent with clinical findings and test results; and (4) "consistent with the overall objective evidence of record that shows that although [Plaintiff] has mental impairments, [Plaintiff] is not as limited in her ability to function as alleged." Tr. 30.

In November 2009, Dr. Mabee once again rated Plaintiff's cognitive functioning impairments as mild to moderate. Tr. 450. With regard to social functioning, Dr. Mabee rated Plaintiff's impairments as moderate to marked. Tr. 450. This rating fell between the December 2008 rating (marked to severe) and April 2009 rating (mild to moderate). In making this evaluation, Dr. Mabee opined that "anxiety and uncertainty will create interpersonal difficulties, [and Plaintiff] will often miss work for fear of social interaction." Tr. 450. As with the December 2008 findings, the ALJ afforded these findings "little weight." Tr. 30. In reaching this conclusion, the ALJ noted that Dr. Mabee's most recent findings were (1) heavily based upon Plaintiff's self-reports; (2) inconsistent[2] with

_____

[2] The ALJ's opinion reads that Dr. Mabee's opinion was "*consistent* with the claimant's activities of daily living reported elsewhere." Tr. 30 (emphasis added). It appears from both the context of the sentence and from the record itself that the ALJ intended to state that Plaintiff's activities of daily living, such as attending

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

1    Plaintiff's activities of daily living; (3) conclusory; (4) not well supported by

2    clinical findings; and (5) "inconsistent with exam findings that [Plaintiff] was

3    cooperative, with normal speech, and appropriate thought process."  Tr. 30.

4            Having thoroughly reviewed the record, the Court concludes that the ALJ's

5    RFC assessment is supported by substantial evidence.  As the ALJ correctly

6    observed, Dr. Mabee's December 2008, April 2009 and November 2009

7    evaluations suggest that Plaintiff's mental impairments, while genuine, were not as

8    severe as Plaintiff claimed.  For example, the December 2008 and November 2009

9    evaluations—which found Plaintiff's social functioning impairments to be marked

10   to severe and moderate to marked, respectively—expressly noted that that Plaintiff

11   may have exaggerated the extent of her impairments:

12           The [Personality Assessment Inventory] was administered to add
             information regarding Ms. Seraquiel's emotional functioning.  Her
13           profile (see attached) was deemed questionably valid due to subtle
             suggestions that she may have portrayed herself in an especially
14           negative manner.  She presented with certain patterns and
             combinations of features that are unusual in clinical populations, but
15           somewhat common among individuals feigning a mental disorder.
             Any interpretations should be made with this in mind.

16   Tr. 312.

17

18   _____

19   substance abuse support group sessions and helping with cooking and cleaning,

20   were *inconsistent* with Dr. Mabee's findings.  *See* Tr. 449.


ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

> To assess [Plaintiff's] emotional functioning, she was administered the [Personality Assessment Inventory]. Her profile (see attached) was deemed valid although there were some suggestions she may have portrayed herself in a negative manner. She had significant elevations on many scales. There may have been more symptoms reported than are objectively present.

Tr. 452. These disclaimers by Plaintiff's own psychologist strongly support the ALJ's conclusion that Plaintiff's mental impairments were not as severe as she claimed.

By way of further example, the April 2009 evaluation notes that Plaintiff was enrolled in school and was able to attend classes four times per week for a period of three to four hours per day. Tr. 325. This same evaluation states that Plaintiff routinely ran errands, attended appointments, and rode the bus. Tr. 325. As the ALJ appropriately recognized, these activities are highly inconsistent with Plaintiff's self-reported inability to function in a typical work environment due to severe social anxiety. Indeed, Dr. Mabee noted that, "[u]pon completing her education, [Plaintiff] may benefit from vocational training to increase her employability and a job assistance program to help her find employment that would accommodate her limitations." Tr. 327.

At bottom, the record contains substantial evidence to support the ALJ's finding that Plaintiff was capable of performing medium work as defined in 20 C.F.R. § 416.967(c)—provided that she was limited to (1) performing "simple repetitive tasks; and (2) having only "superficial occasional contact with the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

1    general public" and "occasional contact with coworkers."  Tr. 27.  This

2    assessment, which adequately accounts for Plaintiff's limited ability to "deal with

3    supervisors, handle stress, maintain appropriate behavior, and learn new tasks,"

4    ECF No. 15 at 12, is strongly supported by Dr. Mabee's April 2009 findings.  The

5    ALJ offered specific, clear and convincing reasons for accepting these findings

6    over Dr. Mabee's December 2008 and November 2009 findings.  Accordingly, the

7    ALJ did not err in assessing Plaintiff's RFC.

8    **B. The ALJ's Adverse Credibility Findings**

9         In social security proceedings, a claimant must prove the existence of

10   physical or mental impairment with "medical evidence consisting of signs,

11   symptoms, and laboratory findings."  20 C.F.R. § 416.908.  A claimant's

12   statements about his her symptoms alone will not suffice.  20 C.F.R. §§ 416.908;

13   416.929(a).  Once an impairment has been proven to exist, the claimant need not

14   offer further medical evidence to substantiate the alleged severity of his or her

15   symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).  As

16   long as the impairment "could reasonably be expected to produce [the] symptoms,"

17   20 C.F.R. §416.929(b), the claimant may offer a subjective evaluation as to the

18   severity of the impairment.  *Id.*  This rule recognizes that the severity of a

19   claimant's symptoms "cannot be objectively verified or measured."  *Id.* at 347

20   (quotation and citation omitted).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 14

In the event that an ALJ finds the claimant's subjective assessment unreliable, however, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). In making such a determination, the ALJ may consider, *inter alia*: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Id.* If there is no evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted). The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Plaintiff argues that the ALJ improperly discredited her testimony concerning her physical and mental impairments. ECF No. 15 at 13-14. Contrary to Plaintiff's assertions, the ALJ provided specific, clear and convincing reasons for discrediting her testimony concerning the severity of her physical and mental impairments. First, the ALJ found that Plaintiff had a "very poor work history"

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

dating back to 1989.  Tr. 28.  In the ALJ's view, the fact that Plaintiff had no

reported income for nearly twenty years prior to filing her disability claim

suggested that Plaintiff was simply unwilling—rather than unable—to work.

Tr. 28.  This finding was further reinforced by the ALJ's observation that Plaintiff

had demonstrated "poor motivation" during a November 2009 psychological

evaluation by Dr. Mabee.  Tr. 28.

Second, and in a related vein, the ALJ discounted Plaintiff's testimony due

to her history of illegal drug use.  Specifically, the ALJ noted that "[t]here is no

evidence or record that suggests that the claimant has ever been motivated to work;

however, there is ample evidence that she has had the wherewithal to obtain illicit

drugs to support years of polysubstance abuse."  Tr. 28.  Thus, the ALJ viewed

Plaintiff's persistent drug use as evidence that her physical and mental impairments

were not so severe as to preclude her from achieving complex goals when she was

motivated to do so.

Third, the ALJ found several inconsistencies between Plaintiff's testimony

and her own conduct.  Specifically, the ALJ found that (1) despite her alleged

inability to walk farther than one block, Plaintiff had engaged in regular exercise in

March and October 2009; (2) despite testifying that she never attempted to lift

anything, Plaintiff admitted to being able to lift a gallon of milk; (3) despite her

claims of severe back and stomach pain, Plaintiff reported significant

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 16

improvements in her back and pelvic pain following surgery in May 2010; (4) despite her allegations of having been disabled since 1989, Plaintiff reported in November 2008 that she had not received medical care for approximately three years; (5) despite claims that she could not function effectively around others due to social anxiety, Plaintiff was attending classes four days per week while working toward a GED degree in April 2009; and (6) despite claims that she suffered from severe memory loss, Plaintiff had given "a detailed personal history that included marital, medical, substance abuse, and vocational information going back a number of years" in December 2008.  Tr. 28.

Finally, the ALJ noted that the record was largely devoid of objective medical evidence to support the alleged severity and limiting effects of Plaintiff's physical and mental impairments.  Tr. 28-29.  As discussed above, the ALJ found that Plaintiff's activities of daily living and the results of her mental status exams were inconsistent with one or more totally disabling mental impairments.  Tr. 29. With regard to Plaintiff's physical impairments, the ALJ found that Plaintiff's medical records did not support her claims of disabling back pain and "female problems."  Among other things, the ALJ noted that Plaintiff "sought medical care a number of times without complaining of any back or abdominal pain," and that a July 2009 physical examination found "no pain behaviors to palpitation or

1  percussion of the thoracolumbar spine, no paravertebral spasm, motor strength [of]

2  4-5/5 in all extremities, and [that Plaintiff's] gait was normal."  Tr. 28.

3        Having thoroughly reviewed the record, the Court concludes that the ALJ

4  supported his adverse credibility findings with specific, clear and convincing

5  reasons which are supported by substantial evidence.  As the ALJ appropriately

6  recognized, the record demonstrates that Plaintiff's physical and mental

7  impairments, while genuine, are not so severe as to preclude her from performing

8  light duty work with appropriate limitations.  Accordingly, the Court grants

9  summary judgment in Defendant's favor.

10  **ACCORDINGLY, IT IS HEREBY ORDERED:**

11      1.  Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**.

12      2.  Defendant's Motion for Summary Judgment (ECF No. 17) is

13         **GRANTED**.

14      3.  The hearing set for February 18, 2014, is **VACATED**.

15      The District Court Executive is hereby directed to file this Order, enter

16  Judgment for Defendant, provide copies to counsel, and **CLOSE** this file.

17      **DATED** this 23rd day of October, 2012.

18                *s/ Thomas O. Rice*

19                THOMAS O. RICE
            United States District Judge

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 18